The first case this morning is 1ST MEDIA v. ELECTRONIC ARTS. Mr. Greenspun. Thank you, Your Honor. Morning, Your Honors. May it please the Court, I would like to introduce first Dr. Lewis and Mr. Sawyer, who are in the gallery today. They are, of course, written about in the briefs, as Your Honors know. And if they were able to speak at the podium today, they would be able to describe in great detail and color the human cost of a wrong, incorrect judgment of inequitable conduct. Especially in a situation here, where the lower court did not give any reasons for its decision to go one way versus the other, and it simply abdicated its role and allowed the accused infringers to offer the findings and conclusions without any edits or changes whatsoever. Mr. Greenspun, am I correct that the judge at the end of the hearing, at the conclusion of the closing arguments, sort of announced that his normal practice was to request the winning party to submit proposed findings of fact and conclusions of law? That's absolutely right, Judge. And you didn't object to that? No, and there's nothing wrong with that as far as it goes. That happens in courts across the country every day. What was wrong is what happened afterwards, which is that there's no apparent scrutiny. There's no explanation by the judge of what the reasons for going one way versus the other were. We were all completely in the dark about that. And then, of course, we were hoping and expecting that there would be some sort of back and forth on the objections and the proposed findings, and there would be edits and changes. And you could really get a point of view of what was on the mind of the judge at the time the district court made its decision. But what is there to suggest that the judge didn't think this through carefully and simply felt comfortable adopting all of the proposed rulings that are in the order? Judge, that's certainly a possibility. But isn't that what we are supposed to presume, that everything is done in the ordinary course and that the district judge is acting properly and reviewing the full record? Yes, and I think we all call that the presumption of correctness. Isn't it not unusual in the District of Nevada for a district court judge to simply strike off proposed and sign the findings and facts and conclusions of the law? Your Honor, I would, of course, defer to you about what's most common in the District of Nevada. I wouldn't be surprised if that happens from time to time. And we're not appealing just the adoption of the verbatim findings. What we're appealing is the clearly erroneous findings of fact that are within the adopted findings. However, from cases like the Bowes case and from several cases in the Ninth Circuit, we know that, first off, from the Supreme Court's Bowes case, the presumption of correctness is weakened under some circumstances. That's, for example, in the circumstance of completely written evidence that leads to findings of fact. Presumption of correctness is weakened. And from the rest of the Ninth Circuit jurisprudence, we know that there's still careful scrutiny applied, more careful scrutiny by the appellate panel in a case where there's verbatim adopted findings. But, of course, turning to the actual appeal of the merit that we have in this case, we have our clearly erroneous findings and improper conclusions of law. And I turn to those. And I turn to those first by quoting a passage from the Therese in Bank Decision. When there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. Cannot be found. That, Your Honors, is a powerful holding. But he found that the witnesses you put forth lacked credibility. There were conclusory mentions of lack of credibility. There were, in fact, mentions in the adopted findings. But some credibility is kind of a conclusion, isn't it? I mean, what do we do to deal with that? It often is recited as a conclusion, but it's not insulated from appeal, Your Honors. And a great example of that is the Criticon case, actually a case where they, I believe, reversed the finding of no inequitable conduct. So typically you'll see an accused infringer rely on a case like Criticon. But within the Criticon decision, in reversing the trial court, the panel reversed the credibility finding because that particular trial judge in that particular case cited nothing in support of his or her, I don't know, but in support of the court's credibility finding. The judge has transcripted the testimony. He can look at the testimony of both the inventor and the patent attorney. And he made some conclusions based on that about incredibility. He has the opportunity to perceive that we don't. Supposing he has enough to find that their testimony is incredible. Is it enough to infer deliberate decision to withhold a known material reference just from incredible testimony under Therosense? No, no, absolutely not. And that's actually because of the Supreme Court's Bose v. Consumers Union decision. That's a case where it— Well, I'll talk to Therosense because I think you've got a universe of information in there. So the question being, Your Honor, whether Therosense— In and of itself gives you enough guidance to talk about whether incredible testimony by itself without more is enough. I don't recall seeing that in Therosense, actually, Your Honor. In fact, I think that would be contrary to the spirit and the literal holdings in Therosense because it's the— That's what I'm asking you. If the infringer is burdened of proof to prove inequitable conduct by clear and convincing evidence, if a trier of fact perceives testimony, finds some problem with the demeanor, discounts to zero what the actor is saying from the stand under oath, all that that means is that that excusing testimony doesn't come into the consideration. We still have to look to the rest of the record to see if they're independent of that testimony as clear and convincing evidence showing either a deliberate—actually, both a deliberate decision to withhold and no material reference, and from that as well, knowledge of materiality. Can the trial judge say falso and unus, falsus and omnia, and work backwards and say, well, look, if they lied about these things, then everything's a lie, and therefore, I can infer some negatives out of it. I believe that was the path taken by the lower court in the Bowes decision, and the Supreme Court reversed that and said you still need independent evidence. In that case, it was an actual malice issue. But still, it's very parallel to what we have here. It's not exactly similar. Not precisely, but it's got state of mind as an issue that must be proved by clear and convincing evidence. It's got a New York Times analysis, which is special to itself. That was part of that decision, but that wasn't part of the examination of what's probative and what's relevant in terms of testimony and credibility. Mr. Greenspan, I want to ask you a question about materiality. You make an argument in your blue brief and also in your gray brief about the Bush reference and how Dr. Loy testified that the reference was missing certain components that were claimed. In particular, you're referring to the testimony at A4552 and pointing out that Dr. Loy's testimony that Bush doesn't disclose technology for receiving purchase information and for retrieving program source material, explaining that billing system is the stylized representation of a unit of a corporation or a group of people, not a piece of technology. I have no idea what that means. Can you tell me what that means? I'll tell you exactly, and those are words directly from the Bush reference itself. In Figure 1 of Bush, there's a box around a lot of words and maybe even some sub boxes. There's a reference numeral 10 pointed to it. When you go to page 4 of Bush, reference numeral 10 is explicitly labeled. It's called a corporation or a group of people. And then that's, of course, the context of everything you read within the box in the figure, legal services, billing center, then there's some other things which slip my mind. I don't have the figure in front of me, but that's why Dr. Loy had full foundation to provide that opinion. So he's referring there to just various groups of people or types of organizations within a technical context, but not a piece of technology? A piece of technology. I think the sense was it's not a computer, it's not a server, it's not something that sits in the closet somewhere with wires coming out of it. There's really no disclosure in Bush of how it was accomplished except what we just discussed, that it's a group of people. So being a group of people, Dr. Loy's opinion as an expert, and this was not rebutted in substance by Dr. Zaida, is that that can't read on the claim 16 karaoke patent MCPS limitation. And then, of course, all of our briefing explains what follows from that. Do you want to save the rest of your rebuttal time, Mr. Greenspan? I would. Thank you, Your Honor. Thank you, Mr. Buresh. Thank you, Your Honors, and good morning. I'll be arguing on behalf of all the appellees for purposes of this morning's argument. What I think is missing from the briefs and wasn't discussed even much here this morning is really the context, and I think Your Honors alluded to this. There was a trial. There was testimony taken. There were credibility findings that were made in light of a very careful analysis by Judge Mahan. But we have, of course, the intervening Theresense case, and this finding was entirely based on a reasonable examiner standard. There was a balancing of materiality and intent. Both of those fly in the face of Theresense. And then we do have the intent point that Mr. Greenspan mentioned, that this seemed to be based on credibility when there were other reasonable inferences. How do we get around all of that? That is a handful, so let me break it down and deal with it one at a time. Theresense was definitely an intervening case, and that creates an interesting dynamic on appeal. But Theresense did not change the law on intent. The findings that Judge Mahan made, he made under the most stringent standards at the time, which was star scientific. Under star scientific, the standard that was in play in that case was a specific intent to deceive the patent office. That was the finding that Judge Mahan was striving towards. But he used the sliding materiality scale. He actually did not, Your Honor. He made it very clear in his findings and conclusions that he did not apply a sliding scale. He was very cautious to take up intent and materiality separately, exactly as Theresense instructed, after the fact, district courts to do. Where was the determination that there was a deliberate decision to withhold any reference? The judge made a finding that there was, I would say, two things. That there was known materiality with respect to all three of the references that are in question here on appeal, Bush, Baggi, and Horty. You have known materiality on the part of the participants in this case. And Judge Mahan, in light of that known materiality and in light of the circumstantial evidence, concluded that there was a specific intent to deceive the patent office. Now see, you just told me there was no sliding scale, and yet the first thing you cited to me as evidence of intent was materiality. No, the evidence of intent was knowledge of materiality. You cannot have knowing conduct if you don't have knowledge of the underlying materiality. So there is necessarily a tie together between intent and materiality. But the question that Theresense was addressing is where the court takes a materiality finding and says this is very highly material, and therefore I'm going to require less evidence of intent. That is the sliding scale that was disparaged in Theresense and, in fact, held to be not good law. But it is impossible to say that you cannot make an intent finding without consideration of materiality because there does, in fact, have to be the mens rea. There has to be a culpable mental state in the sense that the actor knew what they were doing, and they intended to deceive the patent office. But Theresense makes it clear that you need to establish that the applicant must have known of the reference, must have known that it was material, and that there was a deliberate decision to withhold it. Now, you talked in your briefs about the reference was known and arguments about, well, they should have known, or they were aware of, or they therefore were sufficiently informed, therefore they knew it was material. But there's nothing about any deliberate decision to withhold. And in our briefs, I think the way we presented this and the way I believe is the right answer is that a deliberate decision is exactly the same thing as intentionally deceiving the patent office by withholding a known material reference. Those are one and the same concept. And I would point the court – Well, I'm not sure that's a fair – Withholding is intent? No. Withholding a known material reference. Well, let's stop there because there's another very big problem here, and that is the known materiality is based on a very superficial comparison of claim terms, isn't it? In the co-pending claims, the comparison of similar terms, do they have – there was no real claim construction here to show us whether those terms were identical in scope or not. I think you have to be – Well, they're pretty similar, so we're going to consider them identical and say, ah, that's very damaging. I think you have to be careful here about where the knowledge of materiality came from because there was some discussion a moment ago about wasn't it just based upon a lack of credibility of the witnesses or a refutal of the excuses that they offered? And the answer is no. There is a first instance. Before you even get to the explanations, you have to look at whether there is a demonstration, a threshold showing in the terms of theorists of knowledge of materiality. And where did that come from here? You have examiners from other applications that are specifically disclosing prior art and saying this prior art contains coined elements in your other patents. Coined in the sense of these words were made up, I'm going to use shorthand, but the IMM, the IMD, and the MCPS, coined terminology made up, applied in one claim of each of these three patents, just one claim. And in that one claim, you have the three core terms that are described identically because they cut and paste from one application to another. Yeah, but what difference does that make if the respective claims and the respective applications have, in addition to those core elements, other limitations that relate to their various different inventions? It goes directly to the state of mind. When the state of mind is purported to be we did not know of the materiality because we thought these applications were entirely unrelated. And that explanation does not hold water. But it's the claim as a whole. We're not dividing this up into little pieces and oh, you used the same word here, so it's an identical claim? It doesn't need to be an identical claim. You need to show that the applicant was aware of the materiality. And when a reference is described as having the same three components as the claim you're looking at in the asserted patent, the 946 application, that demonstrates knowledge of materiality at a threshold level. And we need to also be careful because there's now three instances of inequitable conduct that were in play, each of which Judge Mahan considered independently. The related applications goes to Baggi and Horty because those were identified in the co-pending United States applications. Bush, however, was identified in a European counterpart that had the same claim at the time of filing. There was two changes made to the 946 claim later in prosecution, but it was the same claim with the same words and the same application. I think the karaoke limitation was added to that claim before the European search report was received, was it not? It was. So it's not the same claim in terms of the potential relevance. There were two changes. There was the addition of karaoke into the preamble of Claim 16, and the word order was changed to purchase. Those were the two changes that were made during the 946 prosecution. But when a piece of prior art is identified in a foreign counterpart application, the law is very clear that that creates a very high inference of materiality. In fact, the witnesses admitted to that and admitted to knowing under the MPEP provisions that there was an extremely strong inference of materiality with respect to the Bush reference. Mr. Buresh, I assume that there was full discovery taken on this inequitable conduct issue. Yes, there was. And I know we have in the record the letter from Mr. Wright to Mr. Sawyer with the search report. This is the July 1995 letter? Correct. Do we have anything in the record as to any communication from Mr. Sawyer to his client reporting that search? Other than the fact that the facts are in the record that it was delivered to Mr. Lewis and that Mr. Lewis reviewed that information. Was it delivered under cover of a letter? That is not in the record. But there was full discovery taken. You're not claiming that you were deprived of the opportunity to locate any such document. No. In fact, such a document might exist. There was no letter from Sawyer to Lewis as part of the discovery or in the record. I guess what I'm getting to is, is there anything missing from this record that would relate to the question of intent relating to the Bush reference? Or do we have the full record? As far as I know, the record is full. We certainly don't have any reason to believe that there was any information that wasn't disclosed. And I wouldn't assert that. It's just not there. Mr. Beresheet, you argue and the other side agrees that remand isn't necessary in this case. But you've got there a sense, whether you think it is applicable or not, which has a completely different standard put in place. Wouldn't it be at least potentially beneficial to both parties for the district court to go back and make new findings in light of the new law? Well, first, I do think there are senses applicable if it came across as arguing that there are senses and that it was never my intent. And the answer to your question is, if this court doesn't – clearly on the materiality side, where Judge Mahan did not find but-for materiality under theracents, it would be on this court to make that finding with respect to example for Bush. And the point of the briefing and the arguments we were making under the case law there is simply with respect to Bush in particular. The findings that are in the record lead you to the conclusion of but-for materiality. And if this court wants to take that step, it's in your power to do so. If not, yes, remand would be beneficial to both parties here to make findings under the but-for standard. The point of our briefing is, in addition to that, the intent finding from Judge Mahan did apply to correct law. And if – I would like to get back to the point of deliberate decision because I don't think we have absolute clarity there yet. But Judge Mahan applied the right law on intent. He did not make any clear errors of fact. He didn't misunderstand anything. He didn't misapply anything. And First Media hasn't demonstrated that as it's their burden to do. The other option for a reversal and remand on intent is that the judge's order was so far off that it was fanciful or arbitrary. And I don't believe that showing has been made. In fact, I think his findings on intent were very good. So the point on remand and whether it would be of assistance is don't make Judge Mahan go through the process of a trial on intent again. If his findings on intent are solid, then the remand should instruct him to reconsider materiality in light of the new standard. But don't consume judicial resources unnecessarily with a general remand. On the issue of deliberate decision, and if there's not other questions, I'd like to get back to that. On the issue of deliberate decision, those are words that were used in Theracense, and they came from Lawrence. And I kept noting earlier, it reflects the underlying culpable mental state. You have to have deliberate conduct. You have to have intentional conduct, and it has to be intentional conduct that results in deception or intentional deception, I should say. That's the culpable mental state. You have to intend to deceive. If we look at Theracense in the remand instructions, it didn't use the word deliberate decision. It said go back to the trial court and determine if there was a specific word used. A conscious decision, thank you. If you look at Mullins, it describes a deliberate decision, but it also talks about a finding of intentional withholding. It's different language, intentional withholding, that describes the same culpable mental state. If we look at Star Scientific, it used a different language yet. It was intentional withholding with the intent to deceive patent office. It all goes to the same question of intentionality and deception. There's a statement in the district court's order at page A9, the very top of page A9, the first two lines. It says intent may be inferred where nondisclosed information is material and where knowledge of the information and its materiality is chargeable to the applicant. In your position, is that consistent with Theracense? It is when you couple that knowledge of the reference, knowledge of the materiality of that reference, and then you have to find intentional deception. You need to find some deliberate intent to mislead the patent office in addition to what this sentence says. Which the judge did find. He found in light of that knowledge and in light of the fact that there was no credible explanation to explain that knowledge. We're talking past each other. Okay. Because the sentence says intent may be inferred where this information is material and where knowledge of the information and its materiality is chargeable to the applicant. But intent may not be inferred, according to Theracense, unless you have in addition some showing of deliberate intent to deceive. Which is the remainder of Judge Mahan's order. He found the threshold showing of knowledge of materiality. That's the threshold showing. And then there's a lack of any credible explanation, and he stops there. But that's against Star Scientific and Theracense. That's not enough. No. Star Scientific and Theracense. I hate to quibble. Okay, please. But they say that absence of a credible explanation by itself is not sufficient to make a finding of specific intent to deceive. And that's absolutely right. Judge Mahan did not do that. He did not simply say… What's the additional evidence of intent? You have to have the threshold showing in the first place. Got that. Now, where's the additional evidence of intent? When you have knowledge of materiality, you proper explanations, and those explanations are found to be incredible. So you do not explain why you did not act consistent with your practice. That's the lack of the alternative explanation. That doesn't suffice under Theracense or Star Scientific. Where is the evidence of intent then? And that's before you get to the explanations. What you have to look at here is knowledge of materiality, practices. You have to have awareness of your duties, knowledge of what you were supposed to be doing. Coupled with that knowledge of materiality, it demands a course of conduct at that point. It demands either disclosure or it demands an explanation of why you were not disclosing. Now, what I'm hearing is I have no additional evidence of intent. I am placing my emphasis on knowledge of materiality and a duty to act on that in the absence of an alternative explanation. I think that's deficient under Theracense and Star Scientific, unless you can educate me further. When you have those conditions in place, knowledge, knowledge of duty, standard practices that you're acting inconsistent with, that creates your threshold showing. Now, here's the thing, and here's what I think you're demanding from me, which I cannot give you, and I'll be very open about that. Okay, you're demanding from me that I point to some evidence in the record that says these gentlemen admitted or somehow demonstrated through their communications, correspondence. Course of conduct, if it's extra. But that course of conduct I've already layered in. But all of Theracense is talking about this whole problem that's been created, and it's a solution. It's an equitable solution in equity to that problem, and it creates a new layer of obligation. And what you're trying to do is bootstrap back into what was happening before Theracense, because that was the law before Theracense. I think the law before Theracense was that in these circumstances, judges were finding that the applicants should have known. They committed negligence, essentially, and that wasn't sufficient. Clearly, in Theracense, put the clamps down on that line of thinking. But this is different. The judge here found, in light of the credibility findings and the circumstantial evidence, that these gentlemen knew of the materiality and acted inconsistently with their standard practices. That Theracense is designed to limit what's going on and to narrow these causes of action and to reduce the numbers of causes of action, and it creates more of a standard. I agree, because it can't be should have known. It can't be a sliding scale. It absolutely tightened down intent. And Judge Mahan, if you look at his findings, he did not do either of those. He did not apply a sliding scale, and he did not apply a should have known standard. But I think the core of your question, what additional evidence can you point to? You're asking for direct evidence. You're asking for the smoking gun of what we can point to and say, here, they absolutely knew of materiality. They absolutely – here's my direct evidence of intent to deceive. And Theracense did not require that, and it would be inconsistent with years and years of case law to require that type of evidence. It didn't, but it went back and looked at those Supreme Court cases from the 1920s and 30s where you had people suborning perjury and providing fraudulent affidavits or knowingly asserting a false patent and sort of set that as the touchstone. I don't – I mean, this is opinion, and I did not read it to go that far. I think that the application of circumstantial evidence was anticipated by Theracense. And not only do I think it was anticipated, I believe that it was expected for the simple reason that people who are committing fraud on the patent office don't document it. And the type of evidence you're looking for is not going to exist except in very rare circumstances, which is why you have to look at the circumstantial record and draw conclusions and inferences from the circumstantial record. But I would grant you that Star Scientific puts an additional hurdle in there, and Theracense adopted it. It cannot be a range of reasonable inferences that you select from. You have to find the most reasonable inference on the facts. But Judge Mahan, sitting as the trial judge, was uniquely situated to do that. He was uniquely situated to consider the circumstantial evidence, hear the testimony, and make credibility findings about what is most believable from these witnesses. And he did that. It's not a job that I think Judge Mahan took lightly. To find that individuals, in essence, committed fraud on the patent office is not something he was inclined to do. If you read the entire trial transcript, he was hesitant from the start. I'll bet you dollars that Judge Mahan never took a case lightly in his life. That would not surprise me. And despite his inclinations, the evidence was compelling, circumstantially, at trial. And to ask for more? No. I don't have direct evidence of intent to deceive. It's going to be evidence based upon a circumstantial judgment call that Judge Mahan was uniquely situated to make. Thank you, Mr. Buresh. Mr. Greenspun? Thank you, Judge Rader. I'll try to be very brief. First, the sliding scale. Judge Lynn, I think Your Honor pointed to page A9 for one proposition. Well, that's also the page where there's the other proposition that Judge Mahan was citing the sliding scale law in his general background discussion. And then if we go forward to page A36, it is paragraph 182. There's language where Judge Mahan said, quote-unquote, the scale tilts to a conclusion that inequitable conduct occurred, citing the Criticon case, which is, of course, that line overruled by Therosense. Do you concede that there was knowledge of materiality? No, absolutely not. Absolutely not. What's your alternative explanation? They didn't appreciate the materiality. It's very well established in the record. These are undisputed facts. Mr. Sawyer was an extraordinarily busy new patent prosecutor. Actually, he wasn't new as a prosecutor, but he had a new branch office that he opened from out of his home. If these references were material, which we don't concede, it's very understandable that an individual with 100 files open at the same time dealing with this level of activity would not appreciate something, especially when it comes into his office, in some cases over 500 days before where the record shows he's considering claim patentability over the prior art. This is a poster child for earlier comments by the court. For example, one of the Northern Telecom cases that you have to take into account the realities of patent practice. But you've got the same terms and their unique terms being used in the various applications. Wouldn't one be alert to those terms being rejected elsewhere? That means it has some relevance. I think it's fair to say that one should be alert, but I don't think that that substitutes for evidence of deceptive conduct when one happens not to be alert. With respect to the European counterpart, wouldn't it be standard practice for any patent attorney to recognize that you're prosecuting a U.S. case and a European counterpart that when anything happened in one, you would look to the other to see if it has any relevance or any bearing? Wouldn't that be automatic? I think it's a good idea, but I also – More than that, isn't it? Well, in this instance, though, we don't have the reference coming in with flags, if you will, of extraordinary relevance, extraordinary importance. This was a reference that came in by itself on the second of two search reports with a Y designation. Being by itself, it wasn't combined in any fashion on the search report, whereas the Y designation says that there's particular relevance if combined. But wouldn't it be absolutely the normal practice that when the European search report came in, the first thing you would do is to go pull out the U.S. counterpart. You'd take a look and you'd say, oh, my goodness, the issue fee is due in five days. I'd better go find out whether this has any relevance or not because I've got a few days that I have a chance to do something if I need to do something. If that perception has bubbled up that you've got that European search report, it's something involving an identical claim, and you're aware enough and you have your wits about you enough to think about that at that particular moment, sure, it's a good idea. I mean, it's an opportunity lost if you don't act on it then because once you pay the issue fee, then your opportunity to make any changes to address an issue is lost. Judge, I think you look at both Dr. Lewis and Mr. Sorter's testimony on this point in the trial court, and I think you saw exactly the kind of humility that you might be expecting of practitioners. I think it's pretty clear from the testimony that they wish they had done things differently. They didn't hold back on that. They didn't try to – there was no arrogance about this discovery and litigation that Bush was not disclosed. There was a sense that, gosh, I wish we really would have done that. But I think we – in Dr. Lewis's words, I think we would have beaten Bush. With what I know now, I think we would have beaten Bush. Was there a letter written by Mr. Sorter to Dr. Lewis reporting that European search report? No, Your Honor. No. There was full discovery on that, including privilege logs and the whole nine yards. How was it communicated? It's unclear from the record. I can't say that it was communicated. It might have been something that got stuck in the file without being communicated to Dr. Lewis. Dr. Lewis, when he was asked the questions, he had a very foggy memory of whether or not he got the reference. I'm not even sure if he was asked questions about the letter itself. But it's consistent with the record that there was never any transmission of Mr. Wright's letter from Mr. Sorter to Dr. Lewis. And Your Honors, if you will, I'd just like to close with one thought in this response to Jeswell, like your questions about reversal versus vacating. And to be fair, if you're offering a reversal – I mean rather, if you're offering to vacate the decision, we'll take that. But we'd prefer a reversal, and we think that this is a special case that deserves a reversal. There's a full record developed below on all the issues. Even under pre-Theracent's law, what you heard from Mr. Burris is consistent with this. There was every incentive to develop the record to the max. I mean, they would have benefited in their presentation of the defense if they had shown deliberate decision and if they had shown but for materiality. And from Judge Lynn, from the TriMed case, we know that there's some skepticism about remanding an issue to a trial judge who has issued adopted findings authored by a party. So this is a perfect case for reversal. Thank you, Your Honors. Thank you, Mr. Greenspoon.